IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GINA PINHEIRO,                          )
                                        )
                  Plaintiff,            )        Civil No. 08-1406-JO
                                        )
            v.                          )        OPINION AND ORDER
                                        )
COMMISSIONER, SOCIAL SECURITY           )
ADMINISTRATION,                         )
                                        )
                  Defendant.            )


    Tim D. Wilborn
    WILBORN LAW OFFICE, P.C.
    P. O. Box 2768
    Oregon City, OR  97045

      Attorney for Plaintiff

    Kathryn Ann Miller
    SOCIAL SECURITY ADMINISTRATION
    701 Fifth Avenue, Suite 2900, M/S 901
    Seattle, WA  98104

    Adrian L. Brown
    U.S. ATTORNEY'S OFFICE
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204

      Attorneys for Defendant

JONES, Judge:

Claimant Gina Mae Pinheiro seeks judicial review of a final decision of the

Commissioner of Social Security denying her applications for disability insurance benefits

("DIB") and supplemental security income benefits ("SSI").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3).  Following a careful review of the record, the court concludes that the

Commissioner's decision contains error and must be remanded for further proceedings.

ADMINISTRATIVE HISTORY

Claimant filed an application for DIB on September 16, 2005, and protectively filed an

application for SSI on the same date, alleging an inability to work since September 1, 2002.  The

applications were denied initially and on reconsideration.

Claimant timely requested a hearing, and two hearings were held before an

Administrative Law Judge ("ALJ") on January 30 and May 22, 2008.  Claimant, represented by

counsel, appeared and testified at both hearings, as did a vocational expert ("VE").  Claimant's

former husband, Ed Zoll, appeared and testified at the first hearing.  On June 16, 2008, the ALJ

issued a decision denying claimant's applications.[1]  The ALJ's decision became the final decision

of the Commissioner on October 3, 2008, when the Appeals Council declined review.

---

[1]      The ALJ also rejected what he viewed as an "implied request" by claimant to
reopen initial denials of earlier applications from 2003 and 2004.  Specifically, the ALJ found
"no 'good cause' shown because no 'new and material' evidence ha[d] been introduced into the
record to call into question the merits of [those] initial denials . . .."  Tr. 12.  Claimant does not
challenge that portion of the ALJ's decision.

2 - OPINION AND ORDER

STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

SUMMARY OF THE ALJ'S FINDINGS

The ALJ determined that claimant met the insured status requirements for DIB through June 30, 2010. The ALJ then employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. §§ 404.1520 and 416.920. The ALJ first determined that claimant had worked but had not engaged in substantial gainful activity for the past six years.

Second, the ALJ found that claimant had a "severe" combination of impairments, as follows:

Ehler's Danlos Syndrome; fibromyalgia; C7-5 bilateral mild-to-moderate foraminal stenosis and C7-C4 spondylosis with mild-to-moderate central stenosis, greater on the left, as shown on MRI scan[;] L2-3 degenerative disk disease of the lumbar spine, as shown on x-rays; post traumatic stress disorder; anxiety disorder[;] disassociative identity disorder; borderline personality disorder[;] and polysubstance abuse.

Tr. 16 (citations to Exhibits omitted).  The ALJ further found that claimant's impairments, either

singly or in combination, did not meet or equal the criteria of any impairment in the Listing of

Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Tr. 18.

In the next step of the evaluation, the ALJ determined that claimant retained the following

residual functional capacity:

> [T]he claimant over an eight-hour period has the residual functional capacity to
> sustain light work in a competitive setting . . . with lifting and/or carrying up to 10
> pounds frequently and 20 pounds occasionally; sitting, standing and walking each
> up to six hours; pushing and/or pulling limited to the pounds shown for lifting
> and/or carrying; climbing ladder/rope/scaffolds occasionally; repetitive strong
> gripping bilaterally limited to occasionally; avoidance of all exposure to hazards.
> She has moderate limitations in the ability to understand, remember and carry out
> detailed instructions, to make judgments on simple work-related decisions, to
> interact appropriately with the general public, supervisors or co-workers and to
> respond appropriately to changes in a routine work setting; as well as a marked
> limitation in the ability to respond appropriately to pressures in a usual work
> setting.

Tr. 18.  In making that determination, the ALJ found that claimant's allegations regarding

physical pain and her perception of pain not to be credible, but with respect to her allegations of

mental incapacity, gave her "full benefit of the doubt in limiting her to the above performance of

tasks."  Tr. 21-22.

The ALJ next determined that claimant was unable to perform any of her past relevant

work.  Tr. 26-27.  At step five, considering claimant's age (younger), education (at least high

school), work experience and residual functional capacity, and based on the VE's testimony, the

ALJ determined that jobs exist in significant numbers in the national economy that claimant can

perform.[2]  Tr. 28.  Consequently, the ALJ found claimant not to be disabled at any time through

---

[2]      For reasons that appear to be clerical in nature, the jobs listed in the ALJ's
                                                                   (continued...)

the date of his decision within the meaning of the Social Security Act, and denied her

applications for benefits.  Id.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record.  I will not,

therefore, repeat the evidence except as necessary to explain my decision.

## DISCUSSION

Claimant makes a variety of allegations of error in the Commissioner's decision:  She

contends that the ALJ improperly rejected her testimony and the statements of her lay witness;

improperly rejected the opinions of several treating and examining doctors; failed to properly

frame the hypothetical questions posed to the VE; and erred in his determination at step five that

other jobs exist that claimant can perform.

I reject all of claimant's allegations of error but one, as explained below.  In doing so, I

note generally that both the ALJ's analysis and the explanation of his reasoning with respect to

claimant's credibility and that of her lay witness, as well as her treating and examining doctors,

are thorough and complete.  Claimant alleged a litany of physical and mental ailments, some of

which, the record shows, were of brief duration and/or of little consequence to claimant's overall

capacity for work, and all of which the ALJ considered and either accepted or rejected based on

all the evidence of record.  This court likewise has thoroughly studied the evidence of record, and

is in full accord with the ALJ's findings concerning claimant's alleged impairments.

---

[2](...continued)
decision are not the jobs listed by the VE in her testimony.  Because all the representative jobs
listed are light SVP 2 unskilled jobs, I conclude that the error is harmless.

5 - OPINION AND ORDER

Underlying the ALJ's rationale is his negative finding concerning claimant's credibility, which is supported by a thorough discussion of the evidence, including the inconsistency between her subjective complaints and the objective medical evidence, her own inconsistent statements, and the substantial evidence of exaggeration and lies. The ALJ's credibility finding was properly made based on his consideration of the relevant factors, and I find it to be error-free. Consequently, this court will not disturb the ALJ's decision to reject claimant's subjective testimony concerning the intensity, persistence and limiting effects of her symptoms.

However, error does exist that requires remand. As claimant correctly points out, the ALJ included the mental limitations Dr. Pearson identified in the final RFC. The ALJ correctly included those limitations in the vocational hypothetical questions, but the VE's answer was ambiguous as to the effect those limitations would have on claimant's ability to sustain work. The relevant colloquy is as follows:

> Q      All right. Let me change this a little bit . . . We have a new -- we
> have a different assessment here on some work-related limitations. This is from
> Dr. Pearson. and he has one, two, three, four, five, six -- he's got seven marked --
> seven moderate limitations and I'll read these off to you. Here's the definition that
> he was using. A moderate limitation in the area, but the individual is still able to
> function satisfactorily. And he has moderate limitations in remembering --
> understanding, remembering, and carrying out detailed instructions, making
> judgments on simple, work-related decisions, interacting appropriately with the
> public, supervisors, and co-workers, and respond appropriately to changes in the
> routine work setting. Okay. So those are the moderates. He has one marked and
> the definition that he had was a serious limitation in this area, the ability to
> function is severely limited, but not precluded. And he checked off marked in
> responding appropriately to work pressures in the usual work setting. So if we
> add those limitations in, what effect would those -- would that have on the three
> job[s] you identified?

* * *

6 - OPINION AND ORDER

A        That is quite a few limits, but I think that the jobs that I listed would still be suitable.  The one concern, of course, would be the marked limitation in which a person severely limited in their ability to respond to work pressures.  And these jobs, as well as all other jobs, have certain expectations that a person needs to be able to meet, along with all other workers, in order to earn their pay.  And I think being severely limited in your ability to deal with work pressures -- that's a question because again, I'm just trying to clarify that all jobs have certain production expectations for a person to be able to earn their wages.

* * *

ATTY:        Well, I just -- I heard you say that the marked limitation -- that does eliminate these last few jobs.  Is that right?

ALJ:    I don't think she quite said that.  I think she had a question –

ATTY:        I know.  that's why I'm asking her to -- that's why I was asking so that –

ALJ:    Yeah.

ATTY:        -- we're clear because to me, I mean that seems like that's the ball game, but –

VE:    Thinking that limitation through, I realize I don't have enough information because saying severely limited to work pressures and I don't know what would happen when the person was put under too much work pressure.  I don't know whether they would leave the job, whether they would refuse to keep working, whether they would work, but make a lot of errors, you know.  There's just not enough information on that for me to really be able to give any kind of clear testimony.

ATTY:        All right.  Then let's assume that in some material way a person would be unable to timely execute all of their responsibilities because of this marked limitation.  Would that eliminate the ability to do the jobs?

VE:    If that happened on a consistent basis, they would end up losing their job, yes.

Tr. 40-42 (emphasis added).

7 - OPINION AND ORDER

Thus, the VE did not answer the ALJ's hypothetical question.  The VE did answer counsel's question, but that question was not based on evidence in the record.  Because it is not this court's role to supply answers to vocational questions in the first instance, the case must be remanded to obtain clarification at step five concerning claimant's ability to perform employment in view of the "marked" limitation that Dr. Pearson identified and the ALJ accepted.

Because questions remain to be resolved, this case must be remanded for further proceedings, not for an immediate award of benefits.  See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

CONCLUSION

The decision of the Commissioner denying benefits is reversed and remanded for further proceedings consistent with this opinion.

DATED this 11th day of February, 2010.


 /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge